IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUDOLPH AND LOIS JOHNSON | : |
| | : |
| | :   CIVIL ACTION |
| v. | : |
| | :   NO. 16-05512 |
| SUNOCO, INC. (R&M), ET AL. | : |

**MEMORANDUM**

**SURRICK, J.**                                                               **FEBRUARY 28 , 2017**

      Presently before the Court is Plaintiffs' Rudolph and Lois Johnson's Motion to Remand this matter to the Court of Common Pleas of Philadelphia County. (ECF No. 20.) For the reasons that follow, the Motion will be denied.

**I.     BACKGROUND**

      **A.     Factual Background**

      Plaintiffs' Complaint alleges that from 1992 to 2005 Plaintiff Rudolph Johnson[1] worked as a mechanic and seaman on the USNS STOCKHAM and the USNS ALGOL United States navigation vessels. (Compl. ¶ 4, Ex. 2 ECF No. 17.) In this role he repaired engines, cleaned tanks, and performed other miscellaneous tasks. (*Id.*) Plaintiffs allege that during the course of his employment, Johnson, on almost a daily basis, was "directly and indirectly exposed to . . . various benzene-containing solvent products . . . manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce by Defendants." (*Id.* ¶ 5.) Plaintiffs further contend that while working on the vessels, Johnson was also exposed "to the vapors, aerosols, mists and fogs from said products, by means of inhalation, ingestion and dermal

---

[1] All references to "Johnson" are references to Plaintiff Rudolph Johnson.

absorption (from direct dermal contact with said products, dermal contact with clothes contaminated by said products and/or dermal contact with benzene vapors in the air)." (*Id.* ¶¶ 6, 27.)

On September 23, 2013, Johnson was diagnosed with myelodysplastic syndrome ("MDS"). (*Id.* ¶ 7.) In 2014, Johnson's MDS mutated into acute myeloid leukemia ("AML"). (*Id.*) Plaintiffs allege that Johnson contracted MDS and AML as a result of his exposure to benzene. Plaintiffs also contend that as a result of the MDS/AML that Johnson contracted, he suffered "multiple side effects, conditions, illnesses and symptoms . . . and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection." (*Id.* ¶ 28.) In addition, Plaintiffs claim that Johnson has suffered substantial financial damages as a result of his condition. (*Id.* ¶ 30.)

> In asserting negligence claims against Defendants, Plaintiffs allege that
>
> Defendants knew and foresaw that their benzene-containing solvent products were used in the manner in which Rudolph Johnson use[d] them, that benzene and benzene-containing solvents would be released into the atmosphere while using their benzene-containing solvent products, and . . . Johnson and others similarly situated would work with, inhale, ingest, dermally absorb, handle or directly and indirectly come into contact with, and/or otherwise be exposed to benzene, which created a hazardous and unsafe condition and risk to the health of Rudolph Johnson and others similarly situated.

(*Id.* ¶ 39.)

Defendants argue that Defendant American Overseas Marine Corporation ("AMSEA")[2] operated the USNS STOCKHOLM and the USNS ALGOL pursuant to instructions contained within federal government contracts. ("Defs.' Resp., ECF No. 24.) Accordingly, Defendants

---

[2] AMSEA is a wholly-owned subsidiary of Defendant General Dynamics Corporation ("GDC").

2

claim, "AMSEA was in all respects acting under orders of an officer of the federal government and entitled to have its rights and defenses evaluated and considered by a federal, rather than a state court." (*Id.*)

### B. Procedural History

On September 23, 2016, Plaintiffs filed this action in the Court of Common Pleas for Philadelphia County. (Docketed in September 2016 Term as No. 002700, E-Filing No. 1609050966.) On October 20, 2016, AMSEA and GDC filed a Notice of Removal to this Court, pursuant to the "federal officer removal" statute, 28 U.S.C. §§ 1442(a)(1). (ECF No. 1.) On November 21, 2016, Plaintiffs filed the instant Motion to Remand this matter back to the Court of Common Pleas. (Pls.' Mot., ECF No. 20.) On December 5, 2016, AMSEA and GDC filed a joint Response in Opposition to Plaintiffs' Motion to Remand to State Court. That same day Sunoco filed a Response in Opposition to Plaintiffs' Motion to Remand to State Court. (Sunoco Resp., ECF No. 25.)

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1441(a), any civil action brought in a state court where a district court has original jurisdiction may be removed by a defendant to a federal district court. 28 U.S.C. § 1441(a). To remove a lawsuit filed in a state court to a federal district court, a defendant must file a notice of removal within thirty days of the date a plaintiff serves the defendant with a copy of the original pleading or complaint. 28 U.S.C. § 1446(b)(1). A case may be remanded to state court for "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process." *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993) (citing 28 U.S.C. § 1447(c)); *Robertson-Armstrong v. Robinson Helicopter Co.*, 18 F. Supp. 3d 627, 632 (E.D. Pa. 2014). Since a "motion to remand shares an essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), it is

properly evaluated under the same analytical approach." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016).

As noted above, Defendants AMSEA and GDC removed this case from state court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1) ("A civil action . . . that is commenced in a State court . . . may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending."). The Third Circuit has instructed courts to broadly interpret the federal officer removal statute. *See Papp*, 842 F.3d at 809; *see also In re Asbestos Litig.*, No. 14-1190, 2016 WL 3360703, at *2 (D. Del. June 10, 2016) ("the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981))); *In re Commw.'s Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466-67 (3d Cir. 2015) ("Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum." (quoting *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994))); *see also Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (noting that the scope of the federal officer removal statute "is not narrow or limited").

## III. DISCUSSION[3]

---

[3] Plaintiffs' Motion to Remand fails to address any jurisdictional inquiry with regard to Sunoco or any other Defendant who was not a ship owner or operator. Sunoco contends in its Response that this Court maintains exclusive jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1333(1), which grants federal district courts exclusive jurisdiction over maritime disputes, as in the instant case. *See, e.g.*, U.S. CONST. art. III, § 2 (conferring federal courts with the authority to hear "all Cases of admiralty and maritime jurisdiction."); *Mortimer v. A.O. Smith Corp.*, No. 13-04169, 2015 WL 1600675, at *1 (E.D. Pa. Jan. 5, 2015); *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 461 (E.D. Pa. 2011). The Court in *Conner* specifically held that federal maritime jurisdiction applies to cases involving asbestos exposure while working on ships that sailed and docked in navigable waters. *See Conner*, 799 F. Supp. 2d at 467-68. Since Plaintiffs' claims

The federal officer removal statute provides in relevant part as follows:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

    (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

The United States Supreme Court in *Mesa v. California*, 489 U.S. 121, 129 (1989), established a four-part test that defendants must satisfy to establish federal officer removal jurisdiction under § 1442(a)(1). This test was adopted by the Third Circuit in *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998), and later adopted and modified by the Third Circuit in *Defender Association* and *Papp*. The test requires a defendant to satisfy the following:

(1) it is a 'person' within the meaning of the statute;
(2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office;
(3) it raises a colorable federal defense; and
(4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

First, GDC and AMSEA are "Persons" under the meaning of § 1442(a)(1). Section 1 of Title I of the United States Code defines the term "person" to "include corporations, companies,

---

against Sunoco are based on the maritime doctrines of unseaworthiness, negligence, maintenance, and cure (Compl. ¶¶ 25-35), and because Plaintiffs' Complaint explicitly alleges that Mr. Johnson was exposed to benzene and benzene-containing solvent products "while performing his duties as a mechanic and seaman on defendants' vessels" (*Id.* ¶ 5), federal maritime jurisdiction applies to Plaintiffs' claims against Sunoco.

associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1.  Plaintiffs do not contest that GDC and AMSEA are persons under § 1442(a)(1).  (Pls.' Mot 3; Defs.' Resp. 5.)

Second, GDC and AMSEA were "acting under" federal authority at the time of Mr. Johnson's injury.  Plaintiffs contend that Defendants' claim that "General Dynamics and AMSEA were acting under an *officer or agency* of the United States" is "at best, an averment of 'general control and direction' which does not warrant removal under the circumstances."  (Pls.' Mot. 3-4.)  This argument is unavailing.  The Third Circuit has maintained that "[t]he 'acting under' requirement, like the federal removal statute overall, is to be 'liberally construed' to cover actions that involve 'an effort to *assist*, or to help *carry out*, the federal supervisor's duties or tasks.'"  *Papp*, 842 F.3d at 812 (quoting *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012)); *see also Defender Ass'n*, 790 F.3d at 468 (liberally construing the "acting under" requirement).  "It is sufficient for the 'acting under' inquiry that the allegations are directed at the relationship between the [defendant] and the [federal officer or agency]."  *Defender Ass'n*, 790 F.3d at 470.  Where, as here, "the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete, that contractor is acting under the authority of a federal officer."  *Papp*, 842 F.3d at 812 (internal quotation marks and citation omitted).

Liberally construing GDC and AMSEA's actions as they pertained to the USNS STOCKHAM and the USNS ALGOL, they were clearly Government agents "acting under" the direction of the United States.  Both the USNS STOCKHAM and the USNS ALGOL were operated by AMSEA, which was "an agency or instrumentality of the U.S. Navy, pursuant to

government contracts."[4]  (Defs.' Resp. 5 (citing Exs. A and B).)  *See Papp*, 842 F.3d at 813 (holding that company's actions under federal contract satisfied "acting under" requirement of § 1442(a)(1)).  The USNS ALGOL contract explicitly details AMSEA'S work description as follows:

> The Contractor shall provide personnel, operational and technical support ashore and afloat, equipment, tools, provisions, and supplies to operate, maintain, and repair eight Fast Sealift Ships (FSS) which are public vessels of the United States Government under the control of the Commander, Military Sealift Command (COMSC).  The Contractor shall plan, schedule, coordinate and assure effective completion of all services described herein.  All mechanical, electrical, and auxiliary systems shall be maintained in accordance with the terms and conditions of this contract throughout the entire contract performance period . . . .

(Defs.' Resp. Ex. A at 11.)  Moreover, the "Command Structure" section of the contracts clearly details that the Contracting Officers Representative (COR) "is the principal [point of contact] for [the] FSS Contractor and is directly responsible to the Contracting Office for the execution of the operating contract," and "is tasked with ensuring that the contractor maintains the FSS in the highest possible state of material, operational, and training readiness."  (*Id* at 12-13.)  While GDC was not an operator or owner of either vessel, AMSEA operated the vessels pursuant to the aforementioned government contracts.  (Defs.' Resp. 2.)  The vessels "were wholly owned by the [the United States] when Plaintiff Rudolph Johnson served as a crewmember," (*id*.), and therefore GDC and AMSEA have adequately satisfied prong two of the *Defender Association/Papp* test.

Third, GDC and AMSEA have a colorable federal defense.  In *Papp*, the Court explicitly stated that application of the federal officer removal statute applies equally "to contractors who possess a colorable federal defense."  *Papp*, 842 F.3d at 809.  Here, Defendants' federal statutory

---

[4] Defendants' motion attaches AMSEA's and GDC's contracts with the Department of Navy, Military Sealift Command.  None of the material facts appearing in the contracts was disputed by any party.

immunity under the Public Vessels Act (46 U.S.C. §§ 31101, et seq.) ("PVA") and the Suits in Admiralty Act (46 U.S.C. §§ 30901, et seq.) ("SIAA") is a colorable defense that withstands Plaintiffs' contentions to the contrary.

The PVA and the SIAA authorize suits against the United States for claims arising from the operation of public vessels owned by or operated for the United States. *See O'Connell v. Interocean Mgmt. Corp.*, 90 F.3d 82, 85 (3d Cir. 1996). The SIAA states, in part:

> If a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States or the federally-owned corporation whose act or omission gave rise to the claim.

46 U.S.C. § 30904. In addition, the PVA states in part that "[a] civil action in personam in admiralty may be brought . . . against the United States for damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1).

The USNS STOCKHAM and the USNS ALGOL were public vessels. AMSEA and GDC state in their Response that "during Johnson's employment, AMSEA was operating the USNS ships under government contracts pursuant to the instructions and orders of the Military Sealift Command of the United States Navy." (Defs.' Resp. 2.) According to Defendants, because AMSEA's maintenance of the vessels was performed at the United States government's direction, "AMSEA was in all respects acting under orders of an officer of the federal government and is entitled to have its rights and defenses evaluated and considered by a federal, rather than a state, court." (Defs.' Resp. 2.) Accepting Defendants' pleadings, a federal forum is required, since under the PVA and SIAA, a federal action against the United States is the exclusive remedy for harm endured on public vessels. 46 U.S.C. § 30904; *Petition of U.S.*, 367 F.2d 505, 511 (3d Cir. 1966) ("[A]ny right to recovery against the United States . . . for injury caused by its public vessel precludes recovery for the same injury against the contract operator

whose conduct was the immediate cause of the accident."); *Beeler v. United States*, 338 F.2d 687, 689 (3d Cir. 1964) (maintaining that sole remedy of passenger, who sought to recover from United States for injuries sustained when boat in which she was a passenger was swept over a dam in river, on ground that accident was due to negligent failure of Corps of Engineers to post properly located signs warning water craft of dam, was under Suits in Admiralty Act); *Tucker v. Chas, Kurz & Co.*, No. 14-4893, 2014 WL 12573518, at *1 (E.D. Pa. Nov. 10, 2014) (holding that the injured plaintiff's exclusive remedy was against the United States when the defendants were found to be acting as agents of the United States) (citing *Cruz v. Marine Transport Lines, Inc.*, 634 F. Supp. 107, 109-12 (D.N.J. 1986), *aff'd* 806 F.2d 252 (3d Cir. 1986)); *Ace Am. Ins. Co. v. Fujifilm Smart Surfaces, LLC*, No. 11-3435, 2011 WL 6001839, at *2 (E.D. Pa. Dec. 1, 2011); *Thomson v. Alcoa S S Co.*, 90 F. Supp. 572, 573 (E.D. Pa. 1950) (maintaining that exlusive recourse for injured respondent, who was handling certain phases of the ship's husbandry under a standard general agency agreement with the War Shipping Administration, was a non-jury action against the United States under the Suits in Admiralty Act, since the vessel on which the respondent served was owned by the United States).

AMSEA's contracts controlling its operation of the USNS STOCKHAM and the USNS ALGOL created a principal-agent relationship with the Government and as a matter of law, under the PVA and the SIAA, Plaintiffs can only seek recourse against the United States government.  46 U.S.C. §§ 30904, 31102.  Since Plaintiffs' exclusive remedies lie against the United States, not only must their causes of action be brought in federal court, Defendants have a colorable defense.

Finally, there is evidence of a causal nexus between Johnson's alleged exposure to benzene and the conduct of a federal officer.[5]  The Supreme Court has instructed that a defendant must "show a nexus, 'a causal connection between the charged conduct and asserted official authority.'"  *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham*, 395 U.S. at 409)).  Until 2011, 28 U.S.C. § 1442(a)(1) required a showing that a defendant had been sued "for any act under color of [federal] office."  The statute was revised in 2011 to include the words "or relating to."  This amendment intended to "broaden the universe of acts that enable Federal officers to remove [suits] to Federal court."  H.R. Rep. No. 112–17, pt. 1, at 6 (2011).  Accordingly, the Third Circuit has "taken a more permissive view of this requirement.  Specifically, [it] ha[s] held that, in order to meet the for or relating to requirement, it is sufficient for there to be a connection or association between the act in question and the federal office."  *Papp*, 842 F.3d at 813 (citation and internal quotation marks omitted).

In crafting the argument that courts frequently remand product liability cases based on "federal officer removal," Plaintiffs rely squarely on seven unreported district court cases outside of this district.[6]  Plaintiffs contend that Defendants failed to submit evidence to satisfy § 1442(a)(1)'s "acting under" requirement, and that there is no evidence pertaining to the alleged officer's orders and/or directions as they relate to benzene and benzene-containing products.  In

---

[5] Plaintiffs contend that "Plaintiffs' claims as to the pertinent Defendant should not be deemed to pose a risk to the federal government, as state courts are adept at handling common law product liability claims in a fair manner." (Pls.' Mot. 6-7.)  While we do not dispute state courts' capabilities to handle product liability claims, that state courts are "adept" at handling such cases certainly does not lead to the inference that they *should* handle them instead of federal courts.

[6] Plaintiffs fail to cite any cases from the Third Circuit.  Indeed, Plaintiffs cite three cases from the Eastern District of Louisiana, one case from the Middle District of Louisiana, one case from the Eastern District of Texas, one case from the District of Massachusetts, and one case from the Southern District of Illinois.  (*See* Pls.' Mot. 5-6.)

addition, they claim that Defendants' averments do not rise to the level of control needed to invoke federal officer removal.

Defendants' pleadings clearly establish a nexus between Plaintiffs' claims and the federal government's conduct. Plaintiffs' allegations relate to GDC and AMSEA's actions with regard to AMSEA's care of the USNS STOCKHAM and the USNS ALGOL, which were both effectively owned and operated by the United States government. As Defendants aver, pursuant to instructions from the federal government,[7] AMSEA conducted repairs on the surfaces of the USNS STOCKHAM and the USNS ALGOL using benzene-containing solvent products. Since these instructions were detailed in a manual issued by the United States government, AMSEA must be classified as a government contractor operating under the direct authority and control of the United States government. As discussed above, in accordance with the provisions of the PVA and the SIAA, Plaintiffs may not recover from GDC and AMSEA in their individual capacities. Defendants have satisfied the nexus requirement of *Defender Association* and *Papp*. The federal district court is the appropriate forum.

### IV. CONCLUSION

In light of the foregoing, Plaintiffs' Motion to Remand to the Court of Common Pleas of Philadelphia County will be denied.

                                            **BY THE COURT:**

                                            _____
                                            **R. BARCLAY SURRICK, J.**

---

[7] The instructions from the federal government can be found in the MPF(E) Technical Manual, which the Government issued to its contractors who operated vessels under the Martime Sealift Command. (*See* Defs.' Response, Ex. C §§ 13.2-4.)

11